UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TEAMSTERS FOR MICHIGAN
CONFERENCE OF TEAMSTERS
WELFARE FUND,

Case No. 09-10837

Honorable Nancy G. Edmunds

    Plaintiff(s),

v.

BLUE SKY HEAVY HAULING, INC.,

    Defendant(s).
_____/


**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [15] AND
<u>DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [16]</u>**

This matter comes before the Court on cross motions for summary judgment, pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth below, Plaintiff's motion is GRANTED IN PART and DENIED IN PART and Defendant's motion is DENIED. Plaintiff's motion is granted as to Defendant's liability for past due contributions for the work months of August 2005 through May 2006 totaling $1,641.40. Plaintiff's motion is denied as to Defendant's liability for past due contributions for the work months of June 2006 through March 2008.

**I.    Facts**

Trustees for Michigan Conference of Teamsters Welfare Fund (Plaintiff) are the trustees of a multi-employer benefit plan that provides health and welfare benefits primarily to individuals who are covered by collective bargaining agreements between employers

and local unions affiliated with the International Brotherhood of Teamsters (IBT), within the meaning of the Employee Retirement Income Security Act of 1974, as amended by the Multi-Employer Pension Plan Amendments Act of 1980 (ERISA). (Tapley Aff., Def.'s Mot., Ex. A ¶¶ 3-4.) Blue Sky Heavy Hauling, Inc. (Defendant), founded in 1997, is a corporation organized under the laws of the State of Michigan. (Answer at 2.)

Effective June 1, 2001, Defendant became party to a collective bargaining agreement between itself and IBT Local Union No. 247 (CBA). (Def.'s First Am. Resp. to Pl.'s Req. to Admit, Def.'s Mot., Ex. B at 1; Def.'s Mot., Ex. C.) The CBA had a five year initial duration—June 1, 2001 through May 31, 2006—and, under its terms, would automatically renew "from year to year thereafter unless written notice of desire to cancel or terminate the Agreement is served by either party upon the other at least sixty (60) days prior to the date of expiration." (Def.'s Mot., Ex. C at Art. XXIII.)

On that same day, and in conjunction with the execution of the CBA, Defendant also executed a Participation Agreement with IBT Local Union No. 247 (PA), which was subsequently "[a]ccepted by" Plaintiff.[1] (Def.'s Mot., Ex. D.) Pursuant to the PA, Defendant was required to remit monthly health and welfare contributions to Plaintiff.[2] (*Id.* ¶ 4.) Under its terms, the PA "shall continue in full force and effect until the Employer notifies the Trustees by certified mail, with a copy to the Union, that the Employer no longer has a legal

---

[1] *See* Def.'s Mot., Ex. D ("This Participation Agreement is entered into by and between the Employer and the Union signatory herein by their duly authorized representatives ... In witness whereof, the Employer and Union have caused this Participation Agreement to be executed by their duly authorized representatives."). Plaintiff subsequently signed the PA, under the heading: "Accepted by:".

[2] Health coverage is provided retroactively (i.e., contributions for coverage provided for a work month are not due until the 10th day of the following month).

duty to contribute to the Fund, and the Trustees acknowledge the termination in writing." (*Id.* ¶ 13.)

Pursuant to the terms of the CBA and the PA, Defendant agreed to be bound by the terms of Plaintiff's Trust Agreement (TA), although Defendant was not required to sign such agreement. (Def.'s Mot., Ex. D ¶ 1; Def.'s Mot., Ex. C at 8-9.) The TA required Defendant to contribute to Plaintiff as required under the CBA and PA. (Def.'s Mot., Ex. E at Art. IV.) Similar to the PA, the TA provides that "[a]n Employer's obligation to contribute to the Fund ... continues until the Employer notifies the Trustees by certified mail, with a copy to the Local Union, that the Employer no longer has a legal duty to contribute to the Fund, and the Trustees acknowledge the termination in writing." (*Id.*)

During the initial term of the CBA—from June 1, 2001 through May 31, 2006—Defendant complied with the terms of the CBA, PA and TA, and remitted employee health and welfare contributions to Plaintiff. (Am. Compl. ¶ 8; Moss Decl., Pl.'s Resp., Ex. A ¶ 3; Pl.'s Resp. at 4.)

On March 28, 2006, Defendant sent a letter to IBT Local Union No. 247 indicating that it was desirous of terminating the CBA as of May 31, 2006. (Moss. Decl., Pl.'s Resp., Ex. A ¶ 3; Answer at 5; Def.'s Reply to Pl.'s Supp. Brief, Ex. A.) The letter provides:

> Pursuant to the Labor Management Relations Act 1947 as amended this letter shall constitute notice to you of our termination of any contracts between your union and Blue Sky Heavy Hauling, Inc. due to expire May 31, 2006.
>
> We of course offer to meet with your representatives for the purpose of negotiating wages, hours and conditions of employment in the unit.

(Def.'s Reply to Pl.'s Supp. Brief, Ex. A at 3.)

Following the March 28, 2006 correspondence, Defendant continued to remit contributions to Plaintiff on behalf of its employees for approximately twenty months: from June 1, 2006 through January 31, 2008. (Tapley Aff., Def.'s Mot., Ex. A ¶ 9.) On January 31, 2008, Defendant notified IBT Local Union No. 247, by letter, that it was procuring alternate health insurance coverage for its employees through Humana Insurance and sought to terminate the coverage provided by Plaintiff effective that day. (Moss. Decl., Pl.'s Resp., Ex. A ¶ 3; Def.'s Resp., Ex. B.) Defendant did not, however, notify Plaintiff of this change at that time. Defendant procured such alternate health insurance coverage effective February 1, 2008, (Moss. Decl., Pl.'s Resp., Ex. A ¶ 5), and discontinued its contributions to Plaintiff as of January 31, 2008, (*id.* ¶ 6).

On March 19, 2008, Defendant sent another letter to IBT Local Union No. 247 indicating that the CBA had not previously terminated, but had continued in effect on a year to year basis and was currently scheduled to expire on May 31, 2008. (Pl.'s Supp. Brief, Ex. C.) This letter provided:

> Reference is made to the Collective Bargaining Agreement between Blue Sky Heavy Hauling, Inc. and Local Union No. 247.
>
> This Collective Bargaining Agreement carried an expiration day of May 31, 2006. Pursuant to Article XXIII, Section 1, it continued in full force and effect on a year to year basis and accordingly, has a current expiration date of May 31, 2008. In accordance with Article XXIII, Section 2, please be advised that Blue Sky Heaving Hauling, Inc. wishes to negotiate changes or revisions to this Collective Bargaining Agreement. This notice is given more than 60 days prior to the referred to termination date. ...
>
> Please advise as to a mutually convenient time to arrange for the initial meeting pursuant to these negotiations.

(*Id.*)

Defendant, on the other hand, did not provide Plaintiff with notice of any type that it was desirous of terminating the PA or TA—that it no longer had a legal duty to contribute—until March 20, 2008. (Tapley Aff., Def.'s Mot., Ex. A ¶ 12.) Defendant does not dispute that, prior to March 2008, it did not provide Plaintiff with notice in accordance with either the PA or TA. (Def.'s Mot., Ex. B, Def.'s First Am. Resp. to Pl.'s Req. to Admit at 2-3.) Moreover, the notice provided on March 20, 2008 was not in accordance with the PA or TA.

The notice Plaintiff received on March 20, 2008 was a result of a phone call to Defendant from Plaintiff's Contribution Control Department inquiring as to the status of Defendant's February 2008 contributions. During that phone conversation Defendant informed Plaintiff that it had switched health insurance carriers on February 1, 2008. (Pl.'s Resp. at 7.) To date, no written notification has been received by Plaintiff. Nevertheless, "Plaintiff determined to pursue only contributions through that date [March 2008], and no coverage was thereafter provided." (Pl.'s Resp. at 7.)

In the summer of 2008, following a petition for a decertification election, IBT Local Union No. 247 was decertified as the exclusive bargaining agent for Defendant's employees.

Plaintiff filed this ERISA action on March 5, 2009 to collect unpaid health and welfare contributions from Defendant, including interest and liquidated damages. This matter is before the Court on cross motions for summary judgment.

## II.  Standard

### A. Rule 12(b)(1) Standard

Subject matter jurisdiction is governed by Fed. R. Civ. P. 12(b)(1). A motion to dismiss pursuant to Rule 12(b)(1) may either attack the claim of jurisdiction on its face or it can

5

attack the factual basis of jurisdiction. *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 881 (6th Cir. 2005). When a defendant challenges subject matter jurisdiction on a factual basis, the plaintiff has the burden of proving jurisdiction in order to survive the motion. *Moir v. Greater Cleveland Regional Transit Authority*, 895 F.2d 266, 269 (6th Cir. 1990).

**B. Rule 56 Motion for Summary Judgment**

Summary judgment is appropriate only when there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The non-moving party may not rest upon its mere allegations, however, but rather "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The mere existence of a scintilla of evidence in support of the non-moving party's position

6

will not suffice. Rather, there must be evidence on which the jury could reasonably find for the non-moving party. *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002).

**III. Analysis**

Plaintiff filed this ERISA action seeking to collect unpaid health and welfare contributions, including interest and liquidated damages.[3] In its motion for summary judgment, Plaintiff argues that Defendant is obligated to remit such past due contributions under two alternate grounds: (1) Defendant—as a result of its contractual obligations under the CBA, PA and TA—is obligated under section 515 of ERISA, 29 U.S.C. § 1145; and (2) Defendant is obligated under the National Labor Relations Act (NLRA) to maintain the status quo during the period of time from expiration of the CBA until impasse.

Defendant, in its cross motion for summary judgment, argues that it is not obligated to remit such past due contributions under four alternate grounds: (1) Defendant properly terminated the CBA, and its conduct in continuing to contribute to Plaintiff following the termination of the CBA was merely to comply with the NLRA; (2) Defendant is not independently obligated under the PA or TA, as the PA and TA terminated with the

---

[3] The Complaint seeks past due contributions for work months within the initial term of the CBA (August 2005 through May 2006) and also for work months subsequent to the initial term of the CBA (June 2006 through March 2008). (Am. Compl., Ex. C.)

As discussed below, genuine issues of material fact exist concerning Defendant's liability for past due contributions following the initial term of the CBA (i.e., subsequent to May 31, 2006). Thus, liability for past due contributions for the work months of June 2006 through March 2008 will survive summary judgment.

Defendant, however, does not contest its liability for past due contributions for the work months within the initial term of the CBA (August 2005 through May 2006). The Court, therefore, grants partial summary judgment in favor of Plaintiff for past due contributions for the work months within the initial term of the CBA (August 2005 through May 2006)—which total $1,641.40.

The discussion and analysis that follows pertains only to Defendant's liability for past due contributions following the initial term of the CBA—June 2006 through March 2008.

underlying CBA; (3) because the CBA, PA and TA terminated, its obligations under section 515 ceased; and (4) any claim for unpaid contributions post-termination alleged as an unfair labor practice (ULP) claim, in violation of the NLRA, falls outside the subject matter jurisdiction of this Court.

### A. ERISA Section 515

Plaintiff contends that Defendant is obligated to make health and welfare contributions, including contributions for work months subsequent to the purported termination of the CBA. Specifically, Plaintiff argues that it is entitled to enforce its contractual rights as provided by the CBA, PA and TA pursuant to section 515 of ERISA, 29 U.S.C. § 1145. Section 515 provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. In other words, under section 515, employers (like Defendant) who are "obligated to make contributions to a multiemployer plan" (like Plaintiff's) must as a matter of federal law "make such contributions." *Id.*

"These obligations, however, do not bind any one employer into perpetuity." *Plumbers & Pipefitters Local Union No. 572 Health and Welfare Fund v. A&H Mech. Contractors, Inc.*, 100 Fed. App'x 396, 400 (6th Cir. 2004). An employer's obligation to make contributions under section 515 ceases upon the termination of the underlying agreement, despite the fact that an employer may have made contributions beyond the termination date. *Id.* at 400-01. Section 515, therefore, is only applicable during the effective periods of an enforceable

agreement. Following the termination of the underlying agreement, the obligations under section 515 no longer bind employers.

To enforce such contractual rights under section 515, Plaintiff must, at a minimum, demonstrate that the CBA, PA or TA was effective at the time the unpaid contributions became due. Plaintiff may demonstrate this either by showing that the agreement had not terminated or, even if it had terminated, that Defendant intended to continue to be bound by it through such date. *See Michigan Bricklayers v. Northwestern Constr., Inc.*, Nos. 95-2379, 96-1346, 1997 WL 351296, at *2 (6th Cir. June 23, 1997).

### 1. Collective Bargaining Agreement

Genuine issues of material fact exist concerning whether the CBA terminated on May 31, 2006 and genuine issues of material fact also exist concerning whether Defendant demonstrated an intent to continue to be bound by the CBA beyond May 31, 2006.

### a. Termination of CBA

Defendant contends that it sent proper notice to IBT Local Union No. 247, on March 28, 2006, effectively terminating the CBA as of May 31, 2006.

> [T]his letter shall constitute notice to you of our termination of any contracts between your union and Blue Sky Heavy Hauling, Inc. due to expire May 31, 2006.

(Def.'s Reply to Pl.'s Supp. Brief, Ex. A at 3.) Although Plaintiff does not refute that the notice was sent, Plaintiff does dispute the effect of such notice.

Plaintiff contends that the CBA did not terminate on May 31, 2006, as evidenced by Defendant's own admission in its March 19, 2008 correspondence.

> [T]he Collective Bargaining Agreement between Blue Sky Heavy Hauling, Inc. and Local Union No. 247 ... carried an expiration day of May 31, 2006. Pursuant to Article XXIII, Section 1, it continued in full force and effect on a

9

> year to year basis and accordingly, has a current expiration date of May 31, 2008.

(Pl.'s Supp. Brief, Ex. C.)

Plaintiff's contention—that the CBA did not terminate on May 31, 2006—is contradicted by IBT Local Union No. 247's April 1, 2008 correspondence to Plaintiff. The "letter from Alex Young, Business Agent of Teamsters Local 247, to Plaintiff ... indicates that Teamsters Local 247 'has been attempting to obtain a successor agreement with Blue Sky Heavy Hauling since the last contract *expired* in May of 2006.'" (Pl.'s Resp. at 5 (quoting Pl.'s Resp., Ex. A) (emphasis added).)

As a result of these letters, this Court finds that genuine issues of material fact exist for trial concerning whether the CBA executed on June 1, 2001 was terminated on May 31, 2006 or whether it continued in effect beyond that date.

### b. Intent to Revive CBA

Plaintiff alternatively argues that, even if the CBA had terminated, Defendant was obligated to continue to make contributions due to its intent to continue to be bound by the CBA. "[P]arties to a collective bargaining agreement may provide for rights which will survive termination of their collective bargaining relationship ... Whether benefits continue beyond the expiration of the collective bargaining agreement depends upon the *intent* of the parties." *Central States, Southeast and Southwest Areas Pension Fund v. Behnke, Inc.*, 883 F.2d 454, 461 (6th Cir. 1989) (emphasis added) (internal quotations and citations omitted).

It is well-settled that "[a]n employer's intent to be bound by the benefits fund provisions of a collective bargaining agreement cannot be inferred when the employer has not signed

10

a collective bargaining agreement." *Northwestern Constr.*, 1997 WL 351296, at *2. Here, there was a signed CBA: the June 1, 2001 CBA. "An expired, signed collective bargaining agreement, however, may continue to bind an employer if the employer demonstrates an intent to continue to be bound." *Northwestern Constr.*, 1997 WL 351296, at *2. The relevant inquiry, thus, is whether Defendant demonstrated an intent to continue to be bound by the CBA.

Plaintiff argues that Defendant's March 19, 2008 letter demonstrates its intent to continue to be bound by the CBA. However, when viewed in conjunction with Defendant's March 28, 2006 correspondence and IBT Local Union No. 247's April 1, 2008 correspondence, Defendant's intent is unclear.

Plaintiff also contends that Defendant's actions—in "continuing to remit health care contributions to Plaintiff ... from June 1, 2006 ... through January 2008"—demonstrate that it intended to continue to be bound by the expired CBA.[4] (Pl.'s Mot. at 9.) Plaintiff argues that "Defendant never expressed its intent not to be bound by the contribution requirements contained in the CBA and PA," as its "conduct continued to comply with the explicit terms of the CBA and PA." (*Id.* at 10.) Defendant, on the other hand, contends that in purchasing alternate health insurance coverage for its employees and discontinuing its contributions to Plaintiff, it demonstrated noncompliance with the explicit terms of the CBA and PA, and an intent not to be bound by those agreements.

---

[4] Other conduct asserted by Plaintiff in an effort to demonstrate Defendant's intent to continue to be bound by the CBA is not conduct by the Defendant, but conduct of the Plaintiff, itself, (its acceptance of such contributions) and conduct of Defendant's employees (in continuing to submit health care claims to Plaintiff). (Pl.'s Mot. at 9-10.)

Defendant's conduct, in continuing contributions beyond the initial term of the CBA, does not necessarily demonstrate its intent to continue to be bound by such a document.[5] At most, it establishes Defendant's intent to comply with the NLRA[6] and to provide its employees with interim health insurance coverage until it such time that it could secure alternate coverage.

Accordingly, this Court finds that genuine issues of material fact exist for trial concerning whether Defendant demonstrated an intent to continue to be bound by the CBA.[7]

### 2. Participation Agreement & Trust Agreement

---

[5] *But see Northwestern Constr.*, 1997 WL 351296, at *1 ("We find that the defendant demonstrated its intent to continue to be bound by the expired agreement by (i) continuing to prepare benefit fund contribution report forms throughout 1993, and submitting those forms with the corresponding payments through July 1993; (ii) continuing to make payroll deductions for union dues under the terms of the expired collective bargaining agreement; and (iii) increasing the amount of those payroll deductions in accordance with the terms of the new collective bargaining agreement before that agreement was signed.").

[6] Defendant argues that its actions do not show an intent to be bound by the terms of the expired CBA because it was merely fulfilling its obligations to maintain the status quo as required by section 8(a)(5) of the NLRA, 29 U.S.C. § 158(a)(5). Defendant asserts that, following the termination of the CBA, an employer must maintain and cannot alter the terms and conditions of employment and must negotiate in good faith until an "impasse" in the negotiation occurs; or risk violating the NLRA. Defendant, therefore, contends that it continued to contribute to Plaintiff to provide health care coverage for its employees in an effort to comply with the NLRA.

[7] Furthermore, to the extent that Plaintiff is arguing that an alleged certification clause purports to obligate Defendant, such an argument is rejected. *See Central States, Southeast & Southwest Areas Pension Fund v. General Materials, Inc.*, 535 F.3d 506, 510 (6th Cir. 2008) ("Given the paucity of pertinent Sixth Circuit precedent-as well as the equivocal weight the Seventh Circuit gives certification clauses-we conclude that the Certification Clause did not obligate General to contribute after the 1991 CBA expired.").

Plaintiff also argues that, notwithstanding either the termination of the CBA or Defendant's intent to continue to be bound by it, independent contractual grounds exist obligating Defendant's past due contributions. Plaintiff contends that the PA and TA were continuing in nature and—because Defendant did not provide notice that it no longer had a legal duty to contribute until March 20, 2008—the PA and TA remained in full force and effect, at least, through that date. As such, Plaintiff argues that it was entitled to rely on the provisions of the PA and TA regarding notice of termination, and that it may enforce such provisions under section 515 of ERISA.

In support of its contention, Plaintiff relies on *Central States, Southeast and Southwest Areas Pension Fund v. Behnke*, 883 F.2d 454 (6th Cir. 1989), for the proposition that federal courts can "enforce contractual obligations to contribute ... established by independent, unexpired trust and participation agreements, which, by their terms, extend beyond the expiration of a CBA." *Behnke*, 535 F.3d at 464. *Behnke*, however, is inapposite.

In *Behnke*, after the parties' collective bargaining agreement expired, the employer signed an "interim" contribution agreement during the negotiation period for a new CBA. The *Behnke* court found that the interim agreement served as an independent contractual basis to hold the defendant liable. Here, the record does not contain any evidence that would support a finding that an interim agreement was executed by Defendant after the initial term of the CBA. Unlike the interim agreement in *Behnke*, which the employer and the union signed after one CBA expired and before the next became effective, the only agreements allegedly executed in this matter were the initial CBA and PA, both of which were signed on June 1, 2001, and no subsequent agreement has been executed.

The Sixth Circuit reached a similar result in *Central States, Southeast & Southwest Areas Pension Fund v. General Materials, Inc.*, 535 F.3d 506 (6th Cir. 2008). The employer in *General Materials* had been a party to both a collective bargaining agreement and a participation agreement, both of which were signed on the same day. *Id.* at 509. The employer terminated the bargaining agreement by providing the union notice of its intention to terminate pursuant to the terms of that agreement. *Id.* at 508. The employer, however, did not notify the fund of the termination, and continued to contribute to the fund for only two of its employees. Years later, the fund filed suit seeking unpaid contributions for the employer's other employees. *Id.* The Sixth Circuit rejected the fund's contention that the employer was independently bound by a participation agreement after the collective bargaining agreement had expired. In so doing, the appellate court distinguished *Behnke* on the basis that the employer there had signed an interim agreement after the initial bargaining agreement had expired. *Id.* at 509-10. The *General Materials* court held that the contemporaneously executed participation agreement terminated with the expiration of the underlying collective bargaining agreement, and that the failure to give notice to the fund as required by the participation agreement was not consequential.

> The fact that General signed the two documents on the same day supports the view that the 1991 Participation Agreement cannot be understood apart from the 1991 CBA. In fact, the terms of the 1991 Participation Agreement depend wholly on the 1991 CBA. The 1991 Participation Agreement sets forth contribution rates dictated by the 1991 CBA, defines covered employees as those employed under the terms of the 1991 CBA, and defines an employer as one bound by the 1991 CBA. After the 1991 CBA expired, the orphan 1991 Participation Agreement became incognizable. *Cf. Laborers Health & Welfare Trust Fund v. Leslie G. Delbon, Inc.*, 199 F.3d 1109, 1111 (9th Cir. 2000) ("[A] contract to contribute to a trust fund of a Union with which [the employer] has no ongoing collective bargaining agreement makes no sense.") (citation and internal quotation marks omitted). As a result, the

> 1991 Participation Agreement did not obligate General to contribute after the
> 1991 CBA expired.

*Id.* at 509. Here, like *General Materials*, the PA executed on June 1, 2001 can be understood only by reference to the contemporaneously signed CBA. Defendant signed the two documents on the same day, the PA acknowledges the underlying CBA between Defendant and IBT Local Union No. 247, and the contribution rates set forth in the CBA are the same as those listed in the PA. The PA, therefore, does not independently obligate Defendant to contribute after the termination of the CBA.[8]

### B. Violation of NLRA

The parties agree that the termination of a collective bargaining agreement does not necessarily end an employer's obligations to its employees. The parties also agree that the NLRA provides that after the termination of a collective bargaining agreement an employer must maintain, and cannot alter, the terms and conditions of employment for its employees and must negotiate in good faith until an "impasse" in negotiation occurs.[9] Defendant maintains, however, that the only valid action against it for altering the terms and conditions of employment is an action before the National Labor Relations Board (NLRB) for failure to fully comply with its status quo obligations.

---

[8] To the extent Plaintiff argues that the TA provides independent contractual grounds obligating Defendant's past due contributions, this Court rejects such an argument. The TA required Defendant to contribute to Plaintiff as required under the CBA and PA. The TA, like the PA, can be understood only by reference to the contemporaneously signed agreements and does not independently obligate Defendant to contribute after the termination of those agreements.

[9] Failure to honor an expired agreement before impasse may constitute an ULP under section 8(a)(1) and (5) of the NLRA, 29 U.S.C. §§ 158(a)(1), (5). *See U.A. 198 Health & Welfare, Education & Pension Funds v. Rester Refrigeration Service, Inc.*, 790 F.3d 423, 425 (5th Cir. 1986).

To the extent that Plaintiff has asserted a claim under the NLRA, not based on the underlying CBA, but based on an attempt to recover delinquent contributions for the period of time after the CBA allegedly terminated until an impasse in bargaining was reached, this Court finds that it is without jurisdiction to entertain such a claim.

> The federal courts ... have jurisdiction of a claim brought under ERISA § 515 to enforce the terms of an existing collective bargaining agreement. It has been determined, however, that § 515 does not provide an exception to the general rule that exclusive jurisdiction rests in the NLRB to determine whether a practice occurring subsequent to the expiration of a collective bargaining agreement constitutes an unfair labor practice.
>
> This Court concludes that the only right the employees and the trust have under the circumstances of this case rests upon the obligation to maintain the status quo during the period of negotiations after the expiration of the collective bargaining agreement as required by the labor law ... The rights of the parties are controlled by the labor statutes, not the terminated contract. Thus, the determinations of their rights must be by the NLRB, not this Court.

*Central States Southeast and Southwest Areas Pension Fund v. Ford Brothers, Inc.*, 688 F.Supp. 316, 318-19 (S.D. Ohio 1987) (internal quotations and citations omitted). Here, such a claim would be better characterized as an unfair labor practice (ULP) claim—in that Defendant had an obligation to maintain the status quo during the period of time after the termination of the CBA and before impasse—and is a question of labor law, controlled by the labor statutes, within the exclusive jurisdiction of the NLRB.[10]

A federal district court, therefore, lacks subject matter jurisdiction to entertain an ULP action initiated by a multiemployer employee benefit fund under section 515 of ERISA to

---

[10] *Rester Refrigeration*, 790 F.3d at 425 ("Perhaps no principle of labor law is better established than that the Board should make the initial determination whether challenged action constitutes an unfair labor practice. As a general rule, federal courts do not have jurisdiction over activity which is arguably subject to § 7 or § 8 of the NLRA, and they must defer to the exclusive competence of the National Labor Relations Board.") (internal quotations and citations omitted).

16

collect unpaid contributions accruing after the termination of a collective bargaining agreement and before impasse is reached. *See Laborers Health and Welfare Trust Fund v. Advanced Lightweight Concrete Co.*, 484 U.S. 539 (1988) (affirming the circuit court held that the "remedy provided by the Employee Retirement Income Security Act for collection of delinquent contributions was limited to collection of 'promised contributions' and did not confer jurisdiction on the District Court to determine whether employer's unilateral decision to refuse to make postcontract contributions violated the National Labor Relations Act").

> [A] federal district court should not entertain an action initiated by a multiemployer employee benefit fund under ERISA to collect unpaid contributions accruing after the expiration of a labor agreement. To rule otherwise would be to embroil the district courts in determining whether or not an impasse in bargaining has occurred after the expiration of a collective bargaining agreement, a question which the NLRB is peculiarly competent to decide.

*Trustees of Nat. Automatic Sprinkler Industry Pension Fund v. Am. Automatic Fire Protection*, 680 F.Supp. 731, 736 (D. Md. 1988).

Here, as discussed above, genuine issues of material fact exist as to whether the CBA terminated. Furthermore, the parties are in disagreement as to whether—and at what date—the parties reached impasse; and such is an inquiry that Plaintiff would have this Court make. (*See* Pl.'s Resp. at 5-6.) Nevertheless, the issue of when an "impasse" was reached is a factual question, the resolution of which is within the exclusive jurisdiction of
17

the NLRB.[11] Accordingly, to the extent that Plaintiff seeks a determination of contribution liability as an ULP claim, this Court is without jurisdiction to entertain such a claim.[12]

## IV. Conclusion

For the foregoing reasons, Plaintiff's motion is GRANTED IN PART and DENIED IN PART and Defendant's motion is DENIED. Plaintiff's motion is granted as to Defendant's liability for past due contributions for the work months of August 2005 through May 2006 totaling $1,641.40. Plaintiff's motion is denied as to Defendant's liability for past due contributions for the work months of June 2006 through March 2008.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: February 8, 2010

---

[11] *Rester Refrigeration*, 790 F.3d at 426 ("To resolve this issue, the factfinder must consider a variety of factors such as the bargaining history, the importance of the issue or issues on which the parties disagree, the number of meetings between the parties, the length of the meetings, and the amount of time elapsed since negotiations began. The outcome often turns on slight factual differences. Because of its specialized expertise, the Board is particularly qualified to decide such a question.").

[12] The instant matter is also distinguishable from *Behnke* regarding the issue of subject matter jurisdiction in that, as discussed above, no interim agreement was entered into. *See Behnke*, 883 F.2d at 464 ("We note that although federal courts lack jurisdiction to determine whether an employer's unilateral decision to refuse to make post-contract contributions violates the National Labor Relations Act, 29 U.S.C. § 158(a)(5), they do have jurisdiction under ERISA, 29 U.S.C. §§ 1102, 1145, to enforce contractual obligations to contribute ('promised contributions') established by independent, unexpired trust and participation agreements, which, by their terms, extend beyond the expiration of a CBA. Thus, because Central States' action for post-contract contributions arises from independent contractual promises reflected in the Interim, Participation, and Trust Agreements, jurisdiction was proper for the period from April through November 1985.") (internal quotations and citations omitted).

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on February 8, 2010, by electronic and/or ordinary mail.

        s/Carol A. Hemeyer
        Case Manager